**UNITED STATES OF AMERICA,**

v.

**Ali Saleh Kahlah AL–MARRI,**
**Defendant.**

**No. 02 CR. 147(VM).**

United States District Court,
S.D. New York.

Dec. 30, 2002.

Richard M. Jasper, Jr., Law Office of Richard M. Jasper, Jr., New York City, for defendant.

Jonathan Etra, Assist. U.S. Atty., U.S. Attorney's Office, New york City, for U.S.

---

## DECISION AND ORDER

MARRERO, District Judge.

Defendant Ali Al–Marri ("Al–Marri") is charged with unauthorized possession of access devices with intent to defraud in violation of 18 U.S.C. § 1029(a)(3). Before the Court is Al–Marri's motion (the "Motion") to be released from the Special Housing Unit ("SHU") at the Metropolitan Correctional Center ("MCC"). The United States (the "Government") opposes the Motion. For the reasons set forth below, the Motion is DENIED.

## I. DISCUSSION

The Government moves to dismiss the Motion for two reasons. First, the Government contends that Al–Marri has failed to exhaust his administrative remedies before filing a complaint in this Court. Second, the Government asserts that Al–Marri's continued incarceration in the SHU is rationally connected to the MCC's goal of maintaining institutional security.

■ The Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under . . . Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In *Porter v. Nussle*, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002), the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits related to prison conditions.[1] The purpose of the exhaustion requirement is to improve prison administration, filter out frivolous claims, and clarify the contours of controversies for cases that are ultimately brought to court. *Id.* at 524–25, 122 S.Ct. 983.

■ In the instant case, Al–Marri was required to seek administrative relief under the BOP's four-step Administrative Remedy Program (the "ARP"). Under the ARP, an inmate must first attempt to informally resolve his claims through discussions with prison officials and by following applicable procedures of the particular facility. *See* 28 C.F.R. § 542.13(a). Second, if dissatisfied with the informal resolution, the inmate must use a designated form to submit a written "Administrative Remedy Request" to the Warden within twenty days of the events triggering the complaint. *See* 28 C.F.R. § 542.14(a). Third, if the formal request is denied, the inmate must appeal to the appropriate BOP Regional Director. *See* 28 C.F.R. § 542.15(a). Finally, an inmate must appeal a negative decision by the BOP Regional Director to the BOP's Office of General Counsel within thirty days of the date of the Regional Counsel's decision. *Id.* The inmate may file an action in federal court only after these four steps have been completed.

Al–Marri admits that he has not exhausted his administrative remedies as described under the ARP, but asks the Court to intervene prior to any such exhaustion. Al–Marri cites a number of cases from the Second Circuit that he contends involved similar types of administrative detention where the court released the petitioning defendant from such detention. *See, e.g., United States v. Suleiman,* 1997 WL 220308 (S.D.N.Y.1997). All of these precedents, however, occurred before the Supreme Court's decision in *Porter,* which makes clear that courts should not intervene in matters regarding prison conditions until corrections officials have had

---

1. While *Porter* does not explicitly say that the PRLA applies to pre-trial detainees, other courts in this Circuit have found that it does. *See, e.g., Hines v. Valhalla County Correctional Facility,* 2002 WL 1822740 (S.D.N.Y.2002).

the time and opportunity to address such complaints internally. *See Porter*, 534 U.S. at 525, 122 S.Ct. 983. Al–Marri has offered no compelling reason why this Court should disregard the Supreme Court's ruling in *Porter*. Consequently, this Court follows that binding precedent in determining whether to review a prison condition complaint, and finds that Al Marri must first exhaust his administrative remedies before asking for the Court's intervention.

The need to pursue administrative remedies is also important from the perspective of the MCC's goal to maintain institutional security. Regardless of the non-violent nature of the crime with which Al–Marri is charged, the Government has produced evidence that it asserts links Al–Marri in some way to individuals the Government has implicated in the attacks of September 11, 2001. Whether or not Al–Marri in fact had any such contacts or connections, the mere reference to such association, as Al–Marri's complaint itself attests, raises significant security issues with regard to Al–Marri's pre-trial incarceration, both as a matter of protecting Al–Marri's safety and as a matter of maintaining order and security in the MCC. Thus, the MCC must be the institution to evaluate in the first instance whether this specific case warrants special treatment, such as confinement of the pre-trial detainee in the SHU. By proceeding through the ARP, the MCC can carefully consider these issues and in the process build an administrative record that will more clearly inform this Court of the reasons behind its decision to continue incarceration of Al–Marri in the SHU. *See Porter*, 534 U.S. at 525, 122 S.Ct. 983 (noting that Congress required exhaustion of administrative remedies in part to facilitate possible future judicial adjudication by creating "an administrative record that clarifies the contours of the controversy.").

## II.  *ORDER*

For the reasons set forth above, it is hereby

**ORDERED** that Al–Marri's pre-trial motion to be released from the SHU at the MCC is DENIED.

**SO ORDERED.**